UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL D. PASSMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:20-cv-00584-JPH-MJD |
| ) | |
| NAUMAN Lt., ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Michael Passmore, an Indiana Department of Correction inmate housed at Putnamville Correctional Facility, filed this lawsuit alleging that Lt. Klayton Nauman subjected him to unconstitutional conditions of confinement by making him stay outside for several hours exposed to the sun.

Lt. Nauman has filed a motion for summary judgment. Dkt. [74]. Because Lt. Nauman is entitled to qualified immunity, that motion is **granted**.

### I.
### Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the

1

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

The Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

In August 2020, there was a COVID-19 outbreak in the dorm where Mr. Passmore was housed. Dkt. 80 at 3, ¶ 6. On August 7, 2020, the inmates who had not tested positive for the virus were told that they were being transferred to the gym, but they needed to go outside to a ballfield in an outdoor recreation area while the gym and dorms were cleaned by a hazmat crew. *Id.* at 4, ¶ 9. Lt. Nauman, one of the officers escorting the group, advised the inmates that they would be outside for up to two hours. *Id.*

The inmates were taken to the outdoor recreation area because this was the only space large enough to safely hold an entire housing unit while the inmates' housing unit was being sanitized. Dkt. 74-1 at 2. The prison populations from each housing unit cannot be openly mixed together. *Id.*

Mr. Passmore told Lt. Nauman that he was "[lily] white, a Nordic, and [going to] burn in the sun." Dkt. 80 at 4, ¶ 11. Lt. Nauman asked Mr. Passmore if he had a "sun pass," and when Mr. Passmore said he did not, Lt. Nauman laughed and told Mr. Passmore it would be good for him. *Id.* at 4, ¶ 12. Mr. Passmore interpreted Lt. Nauman's response as sarcastic. *Id.*

It took longer than two hours to clean and sanitize the housing units. Dkt. 74-1 at 3. Mr. Passmore was outside in the sun from 8:00 a.m. to 3:00 p.m.

and again from 3:30 p.m. to 4:30 p.m. Dkt. 80 at 5, ¶ 13. On that day, the temperature ranged from 58 degrees Fahrenheit in the morning to 82 degrees Fahrenheit in the late afternoon, winds blew up to 8 m.p.h., and the humidity was in the 40% range during the warmer hours. Dkt. 74-2 at 3–4.[1]

Lt. Nauman states that there were bleachers near the ballfield that could provide shade to the inmates. Dkt. 74-1 at 3. Mr. Passmore disputes that the bleachers provided shade. Dkt. 80 at 5, ¶ 13.

Mr. Passmore was severely sunburned from being outside most of the day. *Id.* at 7, ¶ 18. He had blisters from the sunburn and was in such pain that he could not sleep. Dkt. 79-1 at 14. Health care staff recommended he purchase lotion with aloe and Tylenol to treat the burn. *Id.*

The Court screened the Complaint, dkt. 1, and permitted Mr. Passmore to pursue a conditions-of-confinement claim based on allegations that he was forced to spend eight hours outside in the sun with temperatures more than 90 degrees, resulting in his sunburn. Dkt. 33 at 1–2.

## III.
## Discussion

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim

---

[1] Mr. Passmore challenges the reliability of the weather history data submitted by Lt. Nauman, dkt. 80 at 8, but that data is consistent with the Court's own independent review of historical weather data. *See Weather Underground*, https://www.wunderground.com/history/daily/KHUF/date/2020-8-7 (last visited Aug. 22, 2023). The Court therefore takes judicial notice of that weather data from August 7, 2020. *Owens v. Duncan*, 781 F.3d 360, 363 (7th Cir. 2015).

includes both an objective and subjective component. *Giles v. Godinez,* 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious, "meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Thomas*, 2 F.4th at 719 (cleaned up). Under the subjective component, a prisoner must establish that the defendant "acted with deliberate indifference—that [he] knew of and disregarded this excessive risk of harm to the inmate." *Id.* at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted).

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

5

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation marks omitted). Absent an analogous case, a defendant may not be entitled to qualified immunity if "his alleged conduct is so egregious that it is an obvious violation of a constitutional right." *Leiser*, 933 F.3d at 702. Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

When the affirmative defense of qualified immunity is raised, "the burden shifts to the plaintiff to defeat it." *Leiser*, 933 F.3d at 701. To meet that burden and overcome qualified immunity, the plaintiff must "show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713 (7th Cir. 2013). The failure to do so means a plaintiff "cannot defeat" a "qualified immunity defense." *Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) (reversing summary judgment grant because plaintiff did not identify a sufficiently analogous case or explain why defendant's actions were plainly excessive). The Court has discretion to address the elements

in either order. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). Here, the Court finds the second element dispositive.

Mr. Passmore cites three Supreme Court cases in opposition to Lt. Nauman's qualified immunity argument: *Helling v. McKinney*, 509 U.S. 25 (1993), *Rhodes v. Chapman*, 452 U.S. 337 (1981), and *Hope v. Pelzer*, 536 U.S. 730 (2002). Dkt. 79 at 20. In *Helling*, the Court concluded that a prisoner stated an Eighth Amendment conditions-of-confinement claim when he was forced to share a cell with a chain-smoker, thus exposing him to risks of future injury to his health. 509 U.S. at 35. *Helling* would not have put Lt. Nauman on notice that his conduct violated the Eighth Amendment. The plaintiff in *Helling* was subjected to second-hand smoke daily, whereas Mr. Passmore was placed outside for several hours on one day while the facility was cleaned to prevent the spread of infectious disease.

*Rhodes* is even less analogous. There, the Supreme Court concluded that double-celling inmates did not run afoul of the Eighth Amendment because it "did not lead to deprivations of essential food, medical care, or sanitation. Nor did it increase violence among inmates or create other conditions intolerable for prison confinement." 452 U.S. at 348.

The facts in *Hope v. Pelzer* are more like the facts presented in Mr. Passmore's case, but not so similar as to create a clearly established constitutional right. In *Hope,* an inmate was handcuffed to a hitching post as a punishment for about seven hours, during which time he was given water only once and no bathroom breaks. 536 U.S. at 735. The guards forced him to remove

7

his shirt, so he received a sunburn due to the exposure to the sun. *Id.* at 734−35. At one point, a guard taunted him by giving water to some dogs, bringing a water cooler over to Hope, and then intentionally spilling the water on the ground. *Id.* at 735.

The Court found that the "obvious cruelty inherent" in the practice of putting inmates in a hitching post for hours placed the defendants on notice that their actions violated the Eighth Amendment. *Id.* at 745. The Court explained:

> Hope was treated in a way antithetical to human dignity—he was hitched to a post for an extended period of time in a position that was painful, and under circumstances that were both degrading and dangerous. This wanton treatment was not done of necessity, but as punishment for prior conduct.

*Id.*

Here, in contrast, Mr. Passmore does not allege that he was handcuffed in one position for multiple hours, deprived of water or access to a bathroom, or that Lt. Nauman forced him to remain outside as a form of punishment. Rather, there was an uncontested legitimate reason why the inmates had to stay outside for several hours—the inside of the prison was being disinfected to prevent exposure to the COVID-19 virus. Additionally, while Lt. Nauman's response to Mr. Passmore's expression of concern about being in the sun appears to have been sarcastic, dkt. 80 at 4, ¶¶ 11-12, it does not show that Lt. Nauman made Mr. Passmore stay outside as a punishment, with malicious intent, or with deliberate indifference to his well-being. And Mr. Passmore has not designated other evidence from which such an inference could reasonably be drawn. While the Supreme Court recognized that "unnecessary exposure to the heat of the

8

sun" could pose a risk to an inmate's health, *id.* at 738, *Hope* does not establish that Mr. Passmore had a clearly established constitutional right to not be outside in the sun for several hours on a relatively mild summer day when necessitated by the need to disinfect the facility for inmate safety.

In sum, *Helling*, *Rhodes*, and *Hope* are meaningfully distinguishable, and therefore do not aid Mr. Passmore in overcoming qualified immunity. Moreover, the Court has found no other Supreme Court or Seventh Circuit cases that would have placed Lt. Nauman on notice that his conduct violated the Eighth Amendment. Indeed, other courts have found comparable circumstances to not violate the Eighth Amendment. *E.g., Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 678 (N.D. Ill. Dec. 14, 2009) (concluding that forcing inmates to remain handcuffed, with no access to shade or water, outside in 80–85 degree weather for up to five hours was not a serious condition under the Eighth Amendment); *Banda v. Corzine*, 2007 WL 3243917, *9 (D.N.J. Nov. 1, 2007) (concluding that being placed in the recreation yard for three to five hours on a summer day is not an adverse condition).

Accordingly, Lt. Nauman is entitled to qualified immunity, and his motion for summary judgment is **granted**.

## IV.
## Conclusion

For the foregoing reasons, Lt. Nauman is entitled to qualified immunity. Therefore, the motion for summary judgment is **granted**. Dkt. [74].

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/14/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL D. PASSMORE
962822
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com